UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD FRAGOSO,<br><br>Plaintiff,<br><br>v.<br><br>ZHEJUN PIAO, MIYEON CHOI and MASSAGE 4 ALL NJ 7, LLC,<br><br>Defendants. | Civil Action No. 19-6169(MAS)(ZNQ)<br><br>MEMORANDUM OPINION |

This matter comes before the Court upon Defendants Zhejun Piao ("Piao"), Miyeon Choi ("Choi"), and Massage 4 All NJ 7, LLC's (the "business") (collectively, "Defendants") Motion to Disqualify Counsel (the "Motion"). (Mot., ECF No. 21.) Plaintiff Richard Fragoso ("Plaintiff") opposed (Pl.'s Opp'n, ECF No. 22), and Defendants did not reply. The Court considers the parties' contentions without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' Motion is granted, and attorney Matthew Jeon, Esq. ("Jeon") is disqualified as Plaintiff's counsel. (ECF No. 21.)

I.  **BACKGROUND**

Plaintiff's Complaint alleges that in or around October 2017, Piao entered into an agreement with Plaintiff for the purchase of the entire membership of the business, a limited liability company. (Compl. ¶¶ 1, 7, ECF No. 1.) Later that year, in December 2017, membership of the business was transferred to Piao. (*Id.*) On January 5, 2018, "a certificate of amendment was filed with the New Jersey Division of Revenue changing the name of the registered agent and member of the Company from Fragoso to Piao." (*Id.* ¶ 8.) Pursuant to the Sayreville, New Jersey Code of Ordinances, Choi was prohibited from performing massage services, and Piao was

prohibited from operating a massage business, without first obtaining proper business registration. (*Id.* ¶¶ 9-10.) Plaintiff alleges Piao never obtained this business registration. (*Id.* ¶ 11.) On March 8, 2018, employees of the business were arrested on prostitution-related charges. (*Id.* ¶ 12.) Plaintiff alleges that when they were arrested, "Defendants had not obtained their business registration, and in fact, still had Plaintiff's outdated information on the wall of the aforementioned premises." (*Id.* ¶ 13.) Plaintiff claims that he was subsequently investigated for, charged with, and "indicted on two counts of prostitution, one count of money laundering, and one count of operating a sexually oriented business within 1,000 feet of a child care center." (*Id.* ¶ 15.) Additionally, Plaintiff claims that his "bank accounts, including but not limited to one in PNC bank which was formerly associated with the [business], were frozen and seized by the State of New Jersey." (*Id.* ¶ 17.) All criminal charges were dismissed against Plaintiff on January 11, 2019. (*Id.* ¶ 16.)

This is a diversity action in which Plaintiff claims violations of the covenant of good faith and fair dealing (Count One); negligent infliction of emotional distress (Count Two); and *prima facie* tort (Count Three). (*See generally id.*)

## II.  PARTIES' ARGUMENTS

Defendants argue that Plaintiff's counsel, Matthew Jeon, Esq., must be disqualified because "Jeon provided transactional legal services to Piao, Choi and the [b]usiness with respect to Piao's acquisition of the [b]usiness from Plaintiff, and that Jeon is now prosecuting a civil lawsuit against []Defendants on behalf of Plaintiff which arises out of the sale of the [b]usiness and Jeon's prior provision of legal services." (Defs.' Moving Br. 7, ECF No. 21-3.) Defendants contend that in accordance with the two-factor test set forth in New Jersey Rule of Professional Conduct[1] 1.9, the instant matter is "'substantially related' to the prior transactional work which

---

[1] All Rules hereinafter refer to the New Jersey Rules of Professional Conduct.

attorney Jeon performed for the parties," and that "the interests of Jeon's present client and his former clients are 'materially adverse.'" (*Id.* (citing Rule 1.9(b)(1)).) Defendants also argue that Piao did not execute a valid and knowing waiver of Jeon's conflict of interest. (*Id.* Ex. A., ECF No. 23-2.) Defendants state "Piao is from South Korea and has difficulty with English, as attorney Jeon was and is fully aware while attorney Jeon is a fluent Korean speaker." (*Id.* at 9.) Defendants maintain that because the suit is in its early stages, prejudice to Plaintiff resulting from a requirement to secure new counsel will be minimal. (*Id.* at 8.) Finally, Defendants argue that Jeon should be disqualified because he will likely act as a necessary witness in the instant matter in contravention of Rule 3.7, as "Plaintiff contends that [] Defendants failed to undertake certain obligations in connection with the purchase and transfer of the [b]usiness from Plaintiff to [] Piao and that Plaintiff was therefore erroneously or wrongfully associated with and arrested as a result of Defendants' business activities." (*Id.* at 10.)

While Plaintiff concedes that the parties are materially adverse in accordance with Rule 1.9(b)(1), Plaintiff argues that Defendants have failed to establish that these matters are substantially related under Rule 1.9(b)(2). (Pl.'s Opp'n Br. 4, ECF No. 22.) Plaintiff argues that Defendants have not met their burden to show that attorney Jeon provided legal counsel to Defendants in Defendants' acquisition of the business. (*Id.* at 5.) Plaintiff states, "Plaintiff's counsel's legal services were only involved in the consummation of the sale of the [b]usiness on behalf of [] Plaintiff and the follow-up work including the amendment of the certificate." (*Id.*) Plaintiff argues that attorney Jeon "did not obtain any information, whether confidential or not, whether it is pertaining to Defendants' illegal activities, that can be used against Defendants in his representation of Plaintiff for the lawsuit." (*Id.*) Plaintiff also relies upon Exhibit A, Piao's purported waiver appended to Plaintiff's Opposition, to establish Piao's knowing and voluntary

3

waiver of Jeon's conflict in the instant matter. (*Id.* Ex. A, ECF No. 22-2.) Plaintiff avers "Piao was fully informed of a possible conflict of interest and recommended to retain his own attorney, which was spoken in Korean so that he could fully understand." (Pl.'s Opp'n Br 6.) Plaintiff emphasizes "[t]he waiver includes a no-contest clause based on Piao's inability to understand English, which was fully explained to him in [the] Korean language and translated into Korean in writing." (*Id.*) Finally, Defendants assert that the anticipated testimony by counsel relates to an uncontested issue and the nature and value of legal services rendered in the case, and Jeon is therefore not disqualified by Rule 3.7. (*Id.* at 7.)

### III. <u>LEGAL STANDARD</u>

At the outset, it should be noted that "while efforts should be made to avoid inconsistent determinations under [New Jersey's Rules of Professional Conduct], and this Court may certainly look for guidance to the decisions of the New Jersey state courts, our Local Rules do not require that this Court be bound by those decisions." *Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996). Additionally, "[d]isqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts." *Id.* (quoting *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F. Supp. 1121, 1124 (N.D. Ohio 1990)).

"Although doubts are to be resolved in favor of disqualification, a party seeking to disqualify counsel carries a heavy burden and must satisfy a high standard of proof." *Essex Chem. Corp. v. Hartford Acc. & Indem. Co.*, 993 F. Supp. 241, 246 (D.N.J. 1998) (citations omitted). "In the event a motion is brought to disqualify an attorney because of his or her alleged representation of conflicting interests in the same or substantially related matters, the former client should have the initial burden of proving that by application of [Rule] 1.9 it previously had been represented

by the attorney whose disqualification is sought." *City of Atlantic City v. Trupos*, 992 A.2d 762, 462-63 (N.J. 2010) (quoting *Dewey v. R.J. Reynolds Tobacco Co.*, 536 A.2d 243, 253 (N.J. 1988)). "If the burden of production or of going-forward is met, the burden shifts to the attorney(s) sought to be disqualified to demonstrate that the matter or matters in which he or they represented the former client are not the same or substantially related to the controversy in which the disqualification motion is brought." *Id.* at 463 (citing *Avocent Redmond Corp. v. Rose Elecs.*, 491 F. Supp. 2d 1000, 1007 (W.D. Wash. 2007)).

Local Civil Rule 103.1 subjects "members of the bar admitted to practice in [federal] court" to "[t]he Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court . . . subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or decision of law." L. Civ. R. 103.1(a). "Unlike the rules that govern concurrent conflicts of interest, *see* [Rule] 1.7(a) (prohibiting 'representation involving a concurrent conflict of interest' and defining term), a lawyer's duty to a former client is addressed by [Rule] 1.9." *Trupos*, 992 A.2d at 770-71. Rule 1.9, detailing duties to former clients, explains that "[a] lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing." Rule 1.9(a).

The New Jersey Supreme Court has interpreted the substantial relationship element outlined in Rule 1.9 as follows:

> [F]or the purposes of [Rule] 1.9, matters are deemed to be "substantially related" if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior

> representation are both relevant and material to the subsequent representation.

*Trupos*, 992 A.2d at 774; *see also Twenty-First Century Rail Corp. v. New Jersey Transit Corp.*, 44 A.3d 264 (N.J. 2012) (finding disqualification of an attorney after analysis of "the project, the relationship among the parties to the litigation, and the role played by the attorney").

Rule 3.7 precludes a lawyer from acting as an advocate at trial in which the lawyer must act as a witness, "unless the testimony relates to an uncontested issue;" "the testimony relates to the nature and value of legal services rendered in the case;" or "disqualification of the lawyer would work substantial hardship on the part of the client." Rule 3.7(a).

"Waiver is a valid basis for denial of a motion to disqualify." *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1115 (D.N.J 1993) (collecting cases) (holding that the "delay in bringing the motion to disqualify forward was both "substantial and undue" and constituted waiver); *see also Rohm and Haas Co. v. American Cyanamid Co.*, 187 F. Supp. 2d 221, 229 (D.N.J. 2001) (finding that the defendant's undue delay in bringing the motion to disqualify counsel constituted a waiver). This Court has devised a five-factor test to evaluate the kind of implicit waiver that focuses on whether the party has used a motion for disqualification as a tactical measure, delaying until an opportune moment in the litigation to bring their motion forward. *Id.* (citing *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1208 (E.D. Pa. 1992) (citing *INA Underwriters Ins. Co. v. Nalibotsky*, 594 F. Supp. 1199, 1204 (E.D. Pa. 1984) (distinguishing between explicit and implicit waiver via undue delay))). Courts should take care that parties do not use motions to disqualify counsel for tactical reasons. *See id.* Delaware, our sister-district within the Third Circuit, has addressed explicit waiver, stating that clients may "consent to conflicts, whether present or future" by executing a waiver, but "[t]he effectiveness of a waiver depends on 'the extent to which the client reasonably understands the material risks that

the waiver entails.'" *In re IH 1, Inc.*, 441 B.R. 742, 746 (D. Del. 2011) (citing Model Rule of Professional Conduct 1.7, comment 22).[2] "General and open-ended waivers are generally not effective." *Id.* "Comprehensive waivers are more likely to be effective, as are those agreed to by sophisticated clients. *Id.*

## IV. ANALYSIS

### A. Prior Representation

In *Trupos*, the New Jersey Supreme Court reduced the conflict provision of Rule 1.9 to three elements: the existence of prior representation, materially adverse parties, and the matters' respective substantial similarity to one another. *Trupos*, 992 A.2d at 772; *see also Carreno v. City*

---

[2] Comment 22, **Consent to Future Conflict**, instructs:

> Whether a lawyer may properly request a client to waive conflicts that might arise in the future is subject to the test of paragraph (b) [of Model Rule of Professional Conduct 1.7]. The effectiveness of such waivers is generally determined by the extent to which the client reasonably understands the material risks that the waiver entails. The more comprehensive the explanation of the types of future representations that might arise and the actual and reasonably foreseeable adverse consequences of those representations, the greater the likelihood that the client will have the requisite understanding. Thus, if the client agrees to consent to a particular type of conflict with which the client is already familiar, then the consent ordinarily will be effective with regard to that type of conflict. If the consent is general and open-ended, then the consent ordinarily will be ineffective, because it is not reasonably likely that the client will have understood the material risks involved. On the other hand, if the client is an experienced user of the legal services involved and is reasonably informed regarding the risk that a conflict may arise, such consent is more likely to be effective, particularly if, e.g., the client is independently represented by other counsel in giving consent and the consent is limited to future conflicts unrelated to the subject of the representation. In any case, advance consent cannot be effective if the circumstances that materialize in the future are such as would make the conflict nonconsentable under paragraph (b).

Comment 22 to Model Rule of Professional Conduct 1.7.

7

*of Newark*, 834 F. Supp. 2d 217, 224-225 (D.N.J. 2011) (stating that Rule 1.9(a) has three requirements, and dividing them into "a past attorney-client relationship;" "that the current representation involves the same or a matter substantially related to the previous representation;" and "that the interests of the attorney's current client are materially adverse to the interests of the former client.") Plaintiff concedes satisfaction of the materially adverse element of Rule 1.9, admitting that the interests of Plaintiff and Defendants are materially adverse. (Pl.'s Opp'n Br. 4, ECF No. 22 ("Here, it is clear that Plaintiff's interests are materially adverse to Defendants' interests.").)

Plaintiff disputes whether attorney Jeon's service in Plaintiff's sale of his business to Defendants constitutes representation, and whether the matter relating to the sale of the business is substantially similar to the instant matter. (*Id.* at 5.) However, Plaintiff appears to partially concede that it may have appeared to Defendants that Jeon had represented them in the former action, stating: "It might appear in light of the [Rule] 1.9 that Plaintiff's counsel[] provided transactional legal services to Defendants in the sale of the [b]usiness and that Plaintiff's counsel represents Plaintiff against Defendants in the current matter . . . . " (*Id.*)

The Court is persuaded by the check executed by Piao to Jeon with "Atty Fee" written in the memo (Decl. of Zhejun Piao Ex. A, ECF No. 21-2), and the invoice for legal fees from Jeon to Piao (*Id.* at Ex. D), that Jeon's actions on behalf of Defendants in the sale of the business to Piao constituted legal representation in the prior matter. Piao's statements that he had confidential conversations with Jeon during the time in which he believed Jeon to represent him, and his wife, Choi, as their attorney, are also persuasive. (*Id.* ¶¶ 9, 14-16.) In Jeon's invoice to Piao, entitled "Statement for Professional Services," he charged him for "File Certificate of Amendment;" Numerous call[s] and fax correspondences with Department of Treasury;" and "Receive amended

certificate from the Division[.]" (Defs.' Mot., Decl. of Zhejun Piao Ex. D, ECF No. 21-2.) Piao avers that he "believed and was under the impression that Mr. Jeon was representing [Piao] and the [b]usiness especially after the sale was concluded . . . . " (Defs.' Mot., Decl. of Zhejun Piao ¶ 16.) The Court agrees that there is ample support to demonstrate that Jeon represented Piao, Choi, and the business in the prior matter for the purposes of disqualification under Rule 1.9.

**B.     Substantial Similarity**

To determine whether the matters are substantially similar, the Court examines the two-factor test set forth in *Trupos*, that "(1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client," or "(2) facts relevant to the prior representation are both relevant and material to the subsequent representation." *Trupos*, 992 A.2d at 774. Here, Jeon himself is the attorney alleged to represent Piao, and Piao alleges that he had specific conversations with Jeon about matters relating to the sale of the business. (Defs.' Mot., Decl. of Zhejun Piao ¶ 17, ECF No. 21-2.) The Court is cognizant that Piao's first language is not English, and Piao may have faced a greater barrier to understanding that Jeon was not his attorney. (*Id.* ¶ 18.) The Court concludes that it is likely that Jeon was exposed to confidential communications subject to privilege that may be at issue in the instant matter, and that the first factor weighs in favor of disqualification.

The second factor, "whether facts relevant to the prior representation are both relevant and material to the subsequent representation," also weighs in favor of Jeon's disqualification. *Trupos*, 992 A.2d at 774. Plaintiff's lawsuit revolves around the sale and operation of the business from Plaintiff to Piao and Choi, namely, the failure of Piao and Choi to display a proper business registration in conformance with the Sayreville Code of Ordinances, and to remove Plaintiff's

business registration credentials during their brief ownership and operation of the business. (Compl. ¶¶ 11, 13, ECF No. 1.) The Certificate of Amendment filed with the New Jersey Division of Revenue lists Jeon's electronic signature at the bottom of the form, and Piao certifies that he paid him $250.00 in cash (Mot., Decl. of Zhejun Piao Ex. B, ECF No. 21-2), for the services he performed for [Piao] related to the filing of the Certificate of Amendment (*see id.* ¶ 14; *id.* Ex. C), for which Piao was later invoiced (*see id.* Ex. D). Defendants also argue that "Jeon is likely to be a necessary witness in this action" because in addition to alleging that Defendants failed to take certain actions on behalf of the business, Plaintiff claims that Defendants "breached the terms of the sale/transfer agreement," which Jeon facilitated. (Defs.' Moving Br. 4, ECF No. 21-3.)

These exhibits serve to establish substantial similarity between the instant matter and the prior matter in which Defendants were represented by Jeon. Additionally, the foregoing raise issues with Jeon's representation of Plaintiff under Rule 3.7, which disqualifies an attorney from representing a client in an action in which he or she is likely to be a necessary witness at trial. *See Freeman v. Vichiarelli*, 827 F. Supp. 300, 303 (D.N.J. 1993) ("New Jersey Courts have consistently held that [Rule 3.7] begins to operate as soon as the attorney knows or believes that he will be a witness at trial."). That Jeon may be required to serve as a witness should the matter reach the trial stage further demonstrates that he should not be permitted to act as Plaintiff's counsel.

C. **Waiver**

Adopting the reasoning of the Delaware bankruptcy court, and the instruction provided in comment 22 to the Model Rules of Professional Conduct, Piao's explicit waiver of Jeon's conflict of interest is invalid. Unlike the consent executed in *In re IH 1, Inc.*, Piao's consent is neither "explicit and narrow", nor does it "specifically identify the possibility of future conflicts" with

Jeon. *In re IH 1, Inc.*, 441 B.R. at 747. Piao's waiver is instead "general and open-ended." *Id.* at 746; (Pl.'s Opp'n Ex. A, ECF No. 22-2). The document seeks to hold harmless and indemnify Jeon against any further action that may arise resulting from the prior transaction, and as such it is unlikely that Piao understood the material risks involved. (Pl.'s Opp'n Ex. A.) Further, Piao is an individual who does not speak English fluently. (*See* Pl.'s Opp'n Ex. A; Defs.' Mot, Decl. of Zhejun Piao ¶ 18, ECF No. 21-2.)

Defendants did not implicitly waive their right to protection from attorney conflicts through undue delay. Defendants were served with the Complaint on July 31, 2019, and they filed their Motion two months after summons was executed. (*See* ECF No. 11-12.) The Court, therefore, finds this Motion timely.

At this point in the litigation, there is little risk of prejudice to Plaintiff. Moreover, Jeon's continued representation of Plaintiff is fraught with peril as the Court anticipates greater harm to Plaintiff should Jeon be subject to removal from the litigation at a later stage.

## V. <u>CONCLUSION</u>

For the reasons set forth, and for good cause shown, Defendants' Motion is granted. (ECF No. 21.) An appropriate Order follows.

ZAHID N. QURAISHI
United States Magistrate Judge

**Dated:** October 9, 2019